Parkhurst Estate.

528

Argued November 18, 1960.   Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Joseph N. DuBarry, IV,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* for appellant.

*William White, Jr.,* with him *Alan Reeve Hunt,* and *Duane, Morris & Heckscher,* for appellee.

Opinion by Mr. Justice Cohen, January 16, 1961:

This is an appeal from the Orphans' Court of Philadelphia County dismissing the claim of appellant to certain securities held by the ancillary administrator of the estate of Wilbert P. Parkhurst.

The facts with respect to appellant Rae Fischer's claim are not in dispute, having been agreed to in a stipulation of counsel.

Decedent opened a checking account in his own name in 1937 at the Corn Exchange National Bank and Trust Company, now, by merger, the Girard Trust Corn Exchange Bank (Bank).

On or about September 15, 1941, decedent, with his own funds, purchased the following securities, and had them registered in his name and that of appellant, his

niece, "as joint tenants with the right of survivorship and not as tenants in common": 50 shares of General Motors Corporation, common stock; 10 shares of E. I. du Pont de Nemours & Co., preferred, and 40 shares of Commonwealth Edison Co. stock.

The certificates were forwarded by the Bank to decedent on October 22, 1941. On October 6, 1942, decedent rented a safe deposit box at the Bank and placed the certificates therein. One week later he registered the safe deposit box jointly in his name and that of appellant, "with either having full rights of entry therein without the presence of the other." This safe deposit box was entered on only three occasions; October 6, 1942 by decedent alone; July 20, 1944 by appellant alone; September 4, 1947 by appellant alone. The safe deposit box was surrendered on September 4, 1947, and appellant delivered the above listed securities to the Bank and received a receipt stating, "for account of W. P. Parkhurst—safe-keeping."

The 40 shares of Commonwealth Edison stock and the 10 shares of du Pont preferred were sold by the Bank on decedent's written order with appellant's written consent in 1950. The Bank, on decedent's order, then purchased 50 shares of United States Steel common stock. The certificate for the U. S. Steel stock, which was placed in decedent's safe-keeping account, was registered in the joint names of decedent and appellant in the same manner as the certificates which had been sold. In 1955, this stock was split two-for-one and a new certificate registered jointly in the same manner was issued. This certificate was also delivered to the Bank for safe-keeping on behalf of decedent.

As a result of two splits of the General Motors stock, three new certificates for 100 shares each were issued, each registered jointly in the names of decedent and appellant. These certificates were also retained by the Bank in decedent's safe-keeping account.

Dividends issued in decedent's lifetime on all of the shares that he held jointly with appellant were deposited by the Bank to the credit of the "W. P. Parkhurst" checking account.

The stock certificates in question were accompanied by what were described in the stipulation as "printed forms of 'loose powers' or 'stock powers' or 'assignments separate from certificates, name of transferree or assignee, and in all other respects also blank, except that each bore the signature of decedent and [appellant] . . . ." The custodian department cards of the Bank with respect to all of the securities mentioned in the preceding paragraphs were titled solely in the name of W. P. Parkhurst. As a matter of the Bank's practice, none of the securities would have been delivered to anyone other than decedent except upon decedent's express authorization.

Decedent died a resident of Puerto Rico on June 28, 1956, at which time, the Bank held in the decedent's safe-keeping account 100 shares of U. S. Steel Corporation common stock and 300 shares of General Motors common stock registered jointly in the names of decedent and appellant. Appellant's claim for this stock was resisted by the ancillary administrator of decedent's estate whose contention, that an inter vivos gift was not made, was sustained by the hearing judge. The court below en banc dismissed exceptions and this appeal followed.

The principles of Pennsylvania law with respect to the validity of inter vivos gifts require that a gift against a decedent's estate be supported by clear and convincing evidence. *Martella Estate,* 390 Pa. 255, 135 A. 2d 372 (1957). Two elements are essential to the success of such a claim. The first of these is an intention to make an immediate gift. The second, applicable where a joint tenancy is intended, is that there must be such actual or constructive delivery as to in-

vest in the donee so much dominion or control of the subject matter of the gift as is consonant with a joint interest or ownership therein. *Amour Estate,* 397 Pa. 262, 154 A. 2d 502 (1959).

The essence of title as joint tenants with the right of survivorship and not as tenants in common is to vest in two or more persons joint ownership during lifetime, with sole ownership and control passing to the survivor at the death of the other joint tenant. Decedent was obviously aware of the results of placing stock in joint registration since he had to secure appellant's written consent to sell the shares already registered in their joint names. Yet, after a sale of jointly owned stock the decedent again placed new shares in the same joint registration and retained other shares in joint registration for as long as 15 years before his death. The joint registration of the shares coupled with the unequivocal act of placing the shares in a jointly held safe deposit box convinces us that the decedent intended to make an immediate inter vivos gift.

The uncontroverted evidence also establishes delivery sufficient to invest the donee with so much dominion or control of the subject matter of the gift as is consonant with joint interest or ownership therein. Decedent's acts of jointly registering the shares of the corporation and thus denying to himself a significant part of the control and dominion over the stock are evidence of delivery as well as a manifestation of donative intent. By registering stocks jointly decedent could not treat them as his own and it was thus necessary for him to secure the donee's written consent before he could sell, pledge or transfer the shares. Joint registration, while not sufficient delivery in itself under the *Martella* rule, is indeed an important factor in this instance. The joint registration and the resulting issuance of the stock certificates in the names

of both donor and donee as joint owners, the placing of the certificates in the safe deposit box held jointly by the donor and donee, where the donee exercised the right of access to the box, and the free and complete physical possession of the certificates by the donee when she withdrew them from the safe deposit box, are elements sufficient to constitute delivery of the shares.

This case is readily distinguishable on its facts from *Martella Estate,* supra, and *Grossman Estate,* 386 Pa. 647, 126 A. 2d 468 (1956). In *Grossman* the decedent's sister had a right of access to the decedent's safe deposit box as a "deputy." After the death of the decedent securities, registered solely in the name of decedent and issued solely to him but which had the words "Hilda S. Grossman or" written, in an entirely different style of typing, immediately above the name of the decedent, were found in the safe deposit box. It is apparent that this Court could not uphold a gift in that case for to do so might encourage fraud in the delicate area of inter vivos transactions.

Similarly, *Martella,* where the survivor had neither actual possession of the shares nor possession of or access to the small metal box in which the decedent kept the jointly registered securities is not controlling in the present case as to the issue of delivery.

In light of our finding that there was a valid inter vivos gift, the burden of showing a gift back by appellant would naturally fall upon the appellee. The fact that appellant placed the certificates with the Bank for "safe-keeping" does not, in our opinion, constitute re-delivery of the shares to the decedent nor do any subsequent acts of the appellant manifest an intent to make a gift back.

Since all of the shares registered jointly at decedent's death are directly traceable to those originally placed in joint ownership, as the result of stock splits

or as the result of a sale and purchase made with the consent of both donor and donee, appellant is entitled to all of such shares.

There is no indication in the record that during decedent's lifetime appellant made claim upon the Bank or decedent for any portion of the cash dividends issued upon the disputed stocks. We, therefore, agree with that portion of the opinion of the court below holding that appellant waived her rights to such dividends.

Decree reversed.

Mr. Chief Justice JONES would affirm the decree of the court below.