Pappas Estate.

Argued January 5, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George I. Puhak,* for appellant.

*Frank J. DeSanto,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 15, 1968:

On March 23, 1966, Nick Pappas died, unmarried and without any issue. He was survived by three brothers and a sister. His gross estate amounted to $850,000. He left a (lawyer-drawn) will dated August 1, 1963, in which he left the bulk of his estate in trust to provide assistance of various kinds to young men and women of Greek origin, and from decedent's native town of Kremasti, Greece. Neither his brothers nor his sister were provided for. However, he subsequently executed three holographic codicils in which he gave some personal and real property to two relatives and friends. In his last codicil, dated February 22, 1966, testator bequeathed 50 shares of General Aniline Corporation stock and 100 shares of RCA stock to his brother George, the present appellant. These securities at date of death were valued at approximately $7,-000.

On August 12, 1966, his executor filed an inventory of the estate and included therein, in a separate schedule, certain securities valued at $196,000, which George (the appellant) claimed to be his by virtue of an inter vivos gift to him from the deceased nearly two months prior to his death. George filed objections to the inventory and after exceptions, appeal, arguments and adjudication, the Court rejected his claim. From the Court's adverse decree, George took this appeal.

The dispute centers about an event on January 30, 1966 and the legal effect of what occurred at that meeting. Curiously enough, there is consistency in the factual versions given by the witnesses for both sides. All appear to be agreed that on January 30th a friendly gathering took place in decedent's home, attended by seven people, including appellant and the deceased. The latter had recently returned home from the hospi-

tal. During the gathering which lasted about a half-hour, decedent handed appellant a package wrapped in newspapers, saying, *"This is for you, George."* The appellant accepted the package. The package was not opened at that time, and no one except George saw or testified to the contents of this newspaper package. The issue really boils down to this: What was in the newspaper package and what was the legal effect of this delivery with its aforesaid accompanying words?

It is well settled that appellant, the alleged donee of an inter vivos gift by a decedent, has the burden of proving by clear, direct, precise and convincing evidence a delivery to the alleged donee, either actual or constructive, together with a donative intent on the part of the donor. *Brozenic Estate,* 416 Pa. 204, 204 A. 2d 918; *Donsavage Estate,* 420 Pa. 587, 218 A. 2d 112.

As the Court aptly stated in *Donsavage Estate,* 420 Pa., supra (page 594) : "Common sense dictates that, once it has been established by competent evidence or by admission, that stock certificates were registered in the decedent's name when he died and in his possession so shortly before he died, the person who disputes decedent's ownership of the stock at that time must come forward with evidence to sustain such lack of ownership. Cf. Thomas v. Waters, 350 Pa. 214, 220, 221, 38 A. 2d 237. In so ruling, the court below was correct.

"Petitioners having shown that all the disputed stock was registered in decedent's name and in his recent possession, then Helen Mockler had the burden of going forward with evidence to show that she, not the decedent, owned the stock when he died; more specifically, she then had the burden of proving that the decedent, with donative intent, had delivered, either actually or constructively, the securities to her and that the decedent had divested himself of and invested her with the requisite dominion over the stock: Brozenic Estate, 416

Pa. 204, 206, 204 A. 2d 918; Hosfeld Estate, 414 Pa. 602, 605, 202 A. 2d 69; Pronzato v. Guerrina, 400 Pa. 521, 526, 527, 163 A. 2d 297. To establish such a gift inter vivos the evidence must arise not only from legally competent witnesses but also be clear, direct, precise and convincing: Brozenic Estate, supra, at 207; Petro v. Secary Estate, 403 Pa. 540, 543, 170 A. 2d 325; Parkhurst Estate, 402 Pa. 527, 167 A. 2d 476."

Mr. Elmer R. Webley, a trust officer of the executor-bank, testified for appellant that on April 25, 1966 (a month after testator's death) appellant delivered to him the challenged stock certificates which were registered in the name of the decedent and that appellant stated his brother had given these stocks to him. Webley further testified that very few of those certificates were endorsed in blank by decedent, and none of them contained the name of George Pappas as transferee. The legal effect of an endorsement in blank by the alleged donor is, per se, neither controlling nor indicative of the existence of a donative intent to make a gift to the alleged donee: Donsavage Estate, 420 Pa., supra (page 595).

George (the appellant) never attempted to have these stocks transferred to and registered in his name, —indeed, appellant waited until more than a month after donor's death to come forward with his claim, and then said he wanted the stocks but not the dividends. Appellant's own testimony reveals that he and his deceased brother had business relations with each other, and that for some time prior to his brother's death, appellant had lived with decedent in decedent's home and had continued to live there for a couple of weeks after his brother's death. The factual testimony evidences that appellant had ample opportunity to have acquired possession of the stock certificates other than by delivery from decedent. In this connection, the

comment of the deceased to one of the witnesses at the January 30th meeting, "It's only some small stuff," is not a very accurate or reassuring description of a gift of stock worth $196,000.

We agree with the lower Court that appellant failed to prove his claim by clear, direct, precise and convincing evidence. Cf. *Donsavage Estate,* 420 Pa., supra.

Decree affirmed, each party to pay own costs.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

Although I agree with the majority's conclusion that no gift has been demonstrated, I believe that it has without any avowed justification modified the holding of *Donsavage Estate,* supra. The majority tells us that an endorsement in blank "is, per se, neither controlling nor *indicative* of the existence of a donative intent . . . ." (Emphasis supplied.) I agree that an endorsement in blank is not controlling but it certainly is indicative.[1]

What we in fact said in *Donsavage* (supra at 595, 218 A. 2d at 118) was: "The fact that decedent had endorsed the certificates in blank *per se* is neither controlling nor indicative of the existence of an intent that such endorsement operate as a gift . . . ." (Emphasis in original.) While an endorsement in blank does not indicate that the endorsement *itself shall operate as a*

---

[1] Obviously, the issue here turns on what, if anything, was contained in the newspaper. An offer of proof was made that brother George would testify that the claimed certificates were contained in the newspaper. However, he was not competent to testify under the Dead Man's Act until a prima facie gift was proved. *Donsavage Estate,* supra at 601, 218 A. 2d at 121. I agree with the court below that, given the fact that George had access to decedent's home both before and after death, testimony that a newspaper was handed to appellant does not show a prima facie gift. We are thus left with no admissible testimony as to the contents of the newspaper.

*gift,* I firmly believe that endorsement is certainly indicative of donative intent. The next sentence in *Donsavage* states that endorsement of certificates in blank plus possession by the alleged donee would raise a presumption of ownership in the donee. Clearly, then, the endorsement has evidentiary value as to donative intent yet under the majority language evidence that the certificates were endorsed would be inadmissible for this is, according to the majority, not even indicative of donative intent. Where a putative donor does nothing more than endorse some of his stock certificates, of course that endorsement does not operate as a gift. But where the certificates are endorsed and then given to another, certainly that endorsement is at least indicative of the alleged donor's intent.[2]

Mr. Justice EAGEN joins in this concurring opinion.

---

[2] In fact, I believe that evidence showing delivery of *unendorsed* certificates could, under certain circumstances, constitute a valid gift. Section 1-201(32) of the Uniform Commercial Code defines the term purchase to include a taking by gift; §1-201(33) defines a purchaser as any person who takes by purchase. Section 8-307 then provides: "Where a security in registered form has been delivered to a purchaser without a necessary indorsement . . . [as] against the transferor the transfer is complete upon delivery and the purchaser has a specifically enforceable right to have any necessary indorsement supplied." Simply, if A gives unendorsed stock to B and later refuses to sign the certificates so that proper transfer can be made on the corporate books, B can compel A to endorse the certificates. The Code obviously contemplates that unendorsed certificates can be the subject of a valid, enforceable gift.