Ford Estate.

Argued April 16, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Irwin S. Rubin,* with him *Rubin and Hamburg,* for appellants.

*J. Bradley Taylor,* with him *Taylor and Hardwick,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, September 4, 1968:

Mabel W. Ford and Francis P. Ford, husband and wife, opened a joint savings account in 1955 with the Hatboro Federal Savings and Loan Association. This account, titled "Mabel W. Ford and/or Francis P. Ford," is conceded by all parties to have been held by the entireties. On January 13, 1965, this account was closed and its entire balance of $3,932.81 was withdrawn on the signature of Mabel W. Ford. The money was then deposited in a new savings account in the same institution, which is the account presently in controversy. The new account was a joint account with a right of survivorship in the names of Mrs. Ford and her sister, Mrs. Florence A. Weir (the appellee). Subsequently, in June of 1965 a second deposit of $5,000 was placed in the Ford-Weir joint savings account; this check, it is agreed, also represents entireties property.

Mrs. Ford died on December 4, 1965, thirteen months prior to the death of her husband. After Mr. Ford's death, his estate brought suit against Mrs. Weir, alleging that Mr. Ford's estate was the owner of the approximately $8,000 presently in the Ford-Weir joint savings account. The Orphans' Court of Montgomery County held that Mr. Ford consented to both the closing of the husband-wife joint savings account and the opening of the new Ford-Weir joint savings account as well as the $5,000 deposit in the Ford-Weir account and thus entered a decree for Mrs. Weir. From that decree this appeal has been taken.

The court below concluded that Mr. Ford consented to his wife's actions primarily on the basis of testimony given by Mrs. Weir. Appellants contend that she was not a competent witness under the "Dead Man's Act," Act of May 23, 1887, P. L. 158, §5, 28

P.S. §322. As framed by the trial court, the issue presented can be thus stated: "A problem has always existed in the application of this statute [Dead Man's Act] to controversies between an estate and one who claims property originally owned by the decedent but allegedly the subject of *inter vivos* transfer to such person. The difficulty stems from the fact that there are, in such a situation, two parties with a possible interest in the property, each of whom might have an interest adverse to that of the decedent, depending on whether the transfer is valid or not, which is, however, the *ultimate* issue. This Gordian knot is cut by determining whether the gift or transfer is *prima facie* valid; with this determined, it becomes possible to decide to whom the decedent's interest has passed, and the other party to the controversy is rendered incompetent. [Citation omitted.] We must, therefore, determine whether or not the transfer to Florence A. Weir was *prima facie* valid, . . .

"Manifestly, competence must be determined before the witness testifies, not after. Desirable as it might be, rules of admissibility cannot be applied at the end of a case, in light of all the facts that come to light in the interim." (Emphasis in original.)

Prior to Mrs. Weir's testimony, the following facts appeared of record. Mrs. Ford had closed a savings account held by the entireties and transferred these funds to a joint account with her sister, Mrs. Weir. A check for some $15,000 representing the proceeds of the sale of the Ford residence (also held by the entireties) was endorsed by Mr. and Mrs. Ford and deposited by Mrs. Ford in a joint checking account which was in the names of Mrs. Ford and Mrs. Weir. The $5,000 deposit in the Ford-Weir joint savings account was the result of a withdrawal in that amount from the Ford-Weir joint checking account. Whether

these facts established Mrs. Weir's competency turn upon whether they demonstrated a prima facie gift from Mr. Ford to Mrs. Weir via the joint checking and savings accounts established by Mrs. Ford. See *Donsavage Estate,* 420 Pa. 587, 601-02, 218 A. 2d 112, 121-22 (1966); see also *Pappas Estate,* 428 Pa. 540, 239 A. 2d 298 (1968). Since it is not challenged that Mrs. Ford intended to and did give to her sister any interest she had in the entireties account and the $5,000 check representing part of the proceeds of the sale of the Fords' house, the sole dispute must turn upon whether a prima facie gift from Mr. to Mrs. Ford had been demonstrated. We hold that such a demonstration was not made and that Mrs. Weir was therefore not a competent witness.

Where an alleged donee asserts that he represents the decedent's interest, our cases require a showing by independent evidence that the decedent made the gift, a showing which must be made prior to the admission of testimony of the alleged donee. See, e.g., *Katz v. Lockman,* 356 Pa. 196, 51 A. 2d 619 (1947); *King v. Lemmer,* 315 Pa. 254, 173 Atl. 176 (1934); *Crothers v. Crothers,* 149 Pa. 201, 24 Atl. 190 (1892). The essence of appellants' argument is that the evidence introduced prior to Mrs. Weir's testimony shows no participation on the part of decedent, Mr. Ford, in the transfers at issue sufficient to demonstrate a prima facie gift to Mrs. Weir.[1]

All that was disclosed prior to Mrs. Weir's testimony was that *Mrs.* Ford closed the checking account

---

[1] Although appellants also apparently rely on the aspect of *Donsavage Estate,* supra, dealing with the presumption that, where a decedent owns property immediately before his death, it is assumed that he owned this property at death, we do not deem this presumption relevant for the account in issue was titled in Mrs. Weir's name for two years prior to Mr. Ford's death.

which she held with her husband and that *Mrs.* Ford deposited a check jointly endorsed by Mr. and Mrs. Ford in the Ford-Weir joint checking account, a portion of which was in turn deposited in the Ford-Weir savings account. Certainly, this does not demonstrate that vis-a-vis the Fords' savings account Mr. Ford in any way participated in the closing of the account and the transfer of the funds to the Ford-Weir savings account. Nor does Mr. Ford's endorsement of a check, a portion of which is in the contested account, demonstrate a prima facie gift of that check to his wife. That endorsement is, for these purposes, the equivalent of an endorsement in blank. We said of such endorsements in *Donsavage Estate,* supra at 595, 218 A. 2d at 118: "The fact that decedent had endorsed the [stock] certificates in blank *per se* is neither controlling nor indicative of the existence of an intent that such endorsement operate as a gift: [citations omitted]." (Emphasis in original.) Simply, the endorsement of the check by Mr. Ford does not meet the requirement that a prima facie gift by Mr. Ford to his wife be demonstrated prior to Mrs. Weir's testimony.

Appellee contends, however, that the fact that the Ford-Weir account was established two years prior to Mr. Ford's death constitutes a prima facie showing of a gift. This argument rests upon the belief that Mr. Ford's failure to take any action for two years against his wife or her estate shows his consent to the transfer. We do not believe, however, that inaction alone is the equivalent of a record showing by independent evidence that Mr. Ford made a gift to his wife and thus must reject this argument.

Finally, although not raised by either party, we feel compelled to note that a line of cases fathered by *Madden v. Gosztonyi Savings and Trust Company,* 331 Pa. 476, 200 Atl. 624 (1938) does not establish Mrs. Weir's

competency. We said in *Madden* (id. at 489, 200 Atl. at 631) : "Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed with the entirety provision that it is the property of both,* and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences." (Emphasis in original.) Thus, although Mrs. Ford may have been acting as Mr. Ford's agent when she closed their savings account and when she obtained the check endorsed by Mr. Ford, *Madden* holds that these funds were still entireties property and thus Mrs. Ford's withdrawals and deposits would not show that Mr. Ford had made a gift to her of his interest in the entireties property. Finding no evidence legally sufficient to demonstrate a prima facie gift by act of the decedent, Mr. Ford, we conclude that, since the only evidence of Mr. Ford's consent to his wife's actions was supplied by Mrs. Weir's testimony, there was no competent evidence to show Mr. Ford's consent.

However, we believe that the interests of justice require that we remand this case to give Mrs. Weir an opportunity to show Mr. Ford's consent, if she can, by *competent* evidence. While we do not speculate on the availability of any such evidence, nevertheless Mrs. Weir *may* have possessed it, yet justifiably failed to introduce it once the court below permitted her to testify directly on the issue.

If, on the other hand, Mrs. Weir on remand is unable to show consent, then the court would be faced with the situation presented in *Cohen v. Goldberg,* 431 Pa. 192, 244 A. 2d 763 (1968), i.e., a withdrawal by one spouse of entireties property and a suit commenced

by the surviving spouse[2] against the donee of the withdrawing spouse to recover the misappropriated property. Our holding in *Cohen*—the surviving spouse can recover all of the funds appropriated without his consent by the withdrawing spouse—is thus applicable.

The decree of the Orphans' Court of Montgomery County is vacated and the record remanded for further proceedings consistent with this opinion. Each party to bear own costs.

Mr. Justice COHEN concurs in the result.

---

[2] The fact that this action was brought by Mr. Ford's estate rather than by Mr. Ford himself does not change the analysis employed in *Cohen v. Goldberg*. The estate in this suit is merely acting as a representative of Mr. Ford.