**Ford Estate**

*Irwin S. Rubin*, for petitioners.
*J. Bradley Taylor*, for respondent.

TAXIS, P. J., January 22, 1971.—These two turn-over petitions seek to recover from Florence A. Weir, respondent and the sister of decedent's widow, the balances on deposit at decedent's death in two savings accounts, one in the Willow Grove Federal Savings and Loan Association, and the other in the Jenkintown-Abington Federal Savings and Loan Association. The funds are presently held in escrow by the attorneys for the parties.

The petitions reflect fact situations almost identical to those involved in prior proceedings of the same type, the first of which culminated in the decision of the

Supreme Court in Ford Estate, 431 .Pa. 185. Prior to 1965, decedent and his wife, Mabel W. Ford, were tenants by the entireties of the savings accounts in the above two institutions, which accounts, however, required only one signature for withdrawals. Early in 1965, Mabel W. Ford, on her signature alone, transferred the balances of the entireties accounts to new accounts, the ones which are the subjects of these petitions, in the names of herself and Florence A. Weir as joint tenants with right of survivorship. At this time, Francis P. Ford was in poor health and was residing in a nursing home, where he stayed until his death on January 13, 1967. Mrs. Ford predeceased him, on December 4, 1965. It is conceded that Mrs. Weir rendered considerable service to Francis P. Ford in conducting his personal and financial matters during the time that he was confined to the nursing home, although there is some dispute as to just when these services began.

In the first turnover proceeding, the estate contended that the funds in the savings account became the sole property of decedent by survivorship, upon the prior death of his wife, since the unilateral actions of Mabel W. Ford could not alter the entireties nature of the funds. The estate was met with the defense, by Mrs. Weir, that Francis P. Ford had either approved or ratified the actions of his wife during his life, essentially because Mrs. Weir was assisting him in the conduct of his affairs. The estate objected to testimony to this effect from Mrs. Weir on the grounds that she was incompetent under the dead man's rule, and although this court allowed her to testify, the Supreme Court reversed on appeal and this evidence was excluded. Inasmuch as Mrs. Weir's testimony, and her husband's, also excluded, was the only substantial evidence of Mr. Ford's assent to and approval of the trans-

fer to Florence A. Weir, the petition of the estate to turn over the balance in the account was granted.

This was followed by a similar petition relating to another account, to which the only answer made was a denial that the balance in the account in question belonged to decedent's estate. A motion for judgment on the pleadings was allowed and no appeal was taken. The present petitions parallel the prior actions in all important respects, as the only substantial defense pleaded by Florence A. Weir is, again, that the funds in the accounts are her property by survivorship, not the property of decedent. The estate has again. filed motions for judgment on the pleadings, which we grant.

We can add little on this aspect of the case to our opinion and order of April 14, 1969, entering judgment on the pleadings in the prior proceeding. The lack of any competent evidence to prove Mr. Ford's ratification of, or consent to, the transfers made by his wife results, in effect, in the funds becoming his property when Mrs. Ford died. The mere reiteration of a legal conclusion, earlier decided against respondent, does not justify further hearings in this court. Indeed, even if the answers were legally sufficient, which they are not, they still do not set forth any substantial facts to differentiate these proceedings from the prior ones. Unless respondent could produce competent evidence of consent or ratification as set forth above, it does not appear that she could prevail in any event.

The prior decisions, technically, are not res judicata, as the subjects of the actions, the individual accounts, are different. However, it is appropriate to note the doctrine of the "law of the case," which bars, in a particular case, reconsideration of legal points once decided by an appellate court. This rule is normally

applied by the appellate court in limiting the questions which can properly be raised on a second appeal; but if the Supreme Court will not review or change its own previous decision, it clearly is not open to us to change it: See Reamer's Estate, 331 Pa. 117.

In a prior opinion, we noted our dissatisfaction with the dead man's rule, both generally and as it affects this particular case. The dissatisfaction remains, and is augmented by recent developments to which we will refer. Our former ruling that Mrs. Weir was a competent witness was based upon her record ownership of the savings account involved, on the date of death of decedent. At that time, she was the surviving joint tenant, Mabel W. Ford having previously died. In Donsavage Estate, 420 Pa. 587, the Supreme Court had indicated that prima facie valid ownership was shown by record title, unless some other fact existing on the date clearly served to overcome the effect of such registration. In that case, stock certificates were registered in decedent's name on the date of his death and had been in his possession as late as three days before his death; the circumstances by which the alleged donee obtained possession of them were uncertain, although she had them very shortly after death, if not actually before, as she alleged. It was held under these facts that prima facie ownership was in decedent, so that the alleged donee was incompetent to testify. In Pappas Estate, 428 Pa. 540, stock certificates were again alleged to be the subject of inter vivos gift, but were registered in decedent's name at his death, although a few had been endorsed in blank; this likewise was found to show prima facie ownership by decedent; hence, the alleged donee was rendered incompetent. In Hendrickson Estate 388 Pa. 39, a valuable ring was found in decedent's possession at his death, and had been in his

possession for at least 16 years. Ownership by gift was alleged by decedent's daughter. Although there was no record ownership or registered title involved, it was held that such possession established prima facie ownership in decedent; hence, the daughter could not testify. In each of these cases, prima facie or apparent ownership *as of the time of death* was the determining factor.

However, in ruling upon the appeal taken in the present case, the Supreme Court appeared to modify this concept, and ruled, in effect, that valid record title did not necessarily show a prima facie valid transfer for the purpose of determining competence. The court explained that in order for Mrs. Weir to be a prima facie valid transferee, it was necessary to establish not only a valid transfer from Mabel W. Ford to her, i. e., record title, but also a valid transfer or its equivalent by decedent, either to Mrs. Weir directly or to Mabel W. Ford. In other words it was necessary to look beyond the record title to a *prior* transfer which, if invalid, would show that the record title was not the true title.

In light of the recent decision in Clay Estate, 438 Pa. 183, however, we are not sure that the rule has been modified, or, if it has, how it may now be expressed. In that case, jointly owned real estate, at one time owned by decedent but placed in joint names by her, was sold during decedent's life and the proceeds were deposited in decedent's savings account, where they remained at her death. The former joint tenant claimed the proceeds, alleging that they were still survivorship property, in the absence of evidence that claimant had ever given up her interest in them. The lower court held that claimant was incompetent to testify, and this was affirmed by the Supreme Court which said, at page 191:

"It is appellant's position that once she established she was a joint tenant with right of survivorship with respect to the real estate she was rendered competent to testify as to any matters pertaining to the real estate or its proceeds. What she neglects, however, is that as of the date of death the proceeds *apparently* were the property of decedent alone. Therefore, the situation as of the date of death is like that in *Donsavage* and *Hendrickson* in that appellant is claiming that she has an interest in property which appears to be that of decedent alone. *We must look at the apparent title as of the date of death and can not look at what has happened before.*" (Italics supplied.)

Applying this rationale to Ford, the apparent title of the savings accounts in question was in Florence A. Weir at decedent's death, and only by looking at "what has happened before," the lack of joinder by decedent in the transfers, do we find any indication otherwise.

Speaking as a trial judge, this court believes that the rule in Ford Estate will generate much uncertainty in application. While subjectively it may appear fair, it does not delineate which prior defects in title or apparent title result in incompetence, and which have no such effect, although (for example, lack of delivery) still being highly relevant to a determination of the ultimate validity of the gift or transfer.

In applying the dead man's rule to claims by an alleged inter vivos donee or transferee, we always face the need for an arbitrary decision, as set forth in the quotation from our Ford Estate language at page 191 of Clay Estate, supra. We determine who has the adverse interest to decedent (actually the ultimate issue, otherwise stated) by determining whether the gift or transfer is "prima facie" valid, and this rules the decision on competence. Perhaps

the need to resort to such inverted logic to discover how to apply the rule is one of the better arguments for its abolition. Regardless of this, however, we respectfully invite the Supreme Court, at the first opportunity, to announce specifically that the rule in Clay Estate, and the other decisions referred to herein based on the almost conclusive effect of record or registered title as of the date of death, shall henceforth be the rule for determining competence under the dead man's rule, in cases of alleged inter vivos gift or transfer.

There is also before us a petition by Florence A. Weir to "consolidate" actions, founded on the fact that these various turnover proceedings have been brought one by one, rather than together. Obviously, undue repetition, especially of kindred actions, prolongs litigation and is to be discouraged. It is understandable, however, that one such action was made a test case by the estate. Beyond this, what petitioner actually seeks is to require the estate to commence all of the remaining actions it intends to bring, at one time. On this ground, preliminary objections to Mrs. Weir's petition have been filed, and must be sustained. We have no general power to order a litigant to commence an action, if he does not wish to do so. "Consolidation" refers, we think, only to pending or existing actions. It is utilized to avoid wasteful duplication of time and effort; but even if this policy could be applied to actions not yet brought, we have been shown no authority in the law for doing so. Pennsylvania Rule of Civil Procedure 213, relating, inter alia, to consolidation, is specifically restricted to "pending" actions.

## ORDER

And now, January 22, 1971, judgment on the pleadings is entered in favor of the estate on the petitions

to turn over the balances in the Willow Grove Federal and Jenkintown-Abington Federal savings accounts, and J. Bradley Taylor, Esq., and Irwin S. Rubin, Esq., are directed to turn over said balances to the executors of the estate. The preliminary objections to the petition of Florence A. Weir to consolidate or to require the commencement of actions are sustained and the petition is dismissed.