Whitenight et al., Appellants, *v.* Whitenight.

Argued November 16, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Brooke Aker*, with him *Hervey B. Smith, Smith, Aker, Grossman & Holinger,* and *Smith, Eves & Keller,* for appellants.

*Franklin E. Kepner,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 28, 1971:
This case involves a dispute between the executors of the Estate of Mathias P. Whitenight and his widow Hazel over the ownership of certain bearer bonds.

Mathias P. Whitenight died testate on January 21, 1968. On January 30, 1968, letters testamentary were granted by the Register of Wills to M. Paul Whitenight and Mathias C. Whitenight, two sons of the testator who were apparently named as his executors. Whitenight's will does not appear in the record. However, the Opinion of the lower Court states that his will, after providing a $1,000 bequest to a grandson, gives his widow, Hazel Whitenight, *the income for life from one-third of his residuary estate,* the corpus to be divided at her death among his seven children (by a prior marriage) or their issue. Testator gave the remaining two-thirds of his residuary estate absolutely to his seven children or their issue. Although the will gives his widow Hazel less than her statutory share, the Court's Opinion states that she did not elect to take against his will.

Shortly after testator's death, his executors and their attorney undertook to locate $18,000 of U. S. Treasury bonds which they believed were owned by the testator, but which were not found among his personal effects.

On April 20, 1968, the attorney for the Estate wrote a memorandum to all of the beneficiaries of the Estate, informing them that he had notified the United States Treasury Department that the bonds were missing. On April 30, 1968, testator's widow Hazel, who had lived with her husband in their jointly owned home, wrote to the attorney for the Estate stating that she had possession of these bonds. She added (1) that between 1962 and 1963, $6,000 (face value) of the Treasury bonds had been purchased with money supplied from her earnings as a teacher; (2) that $5,000 of the Treasury bonds had been given to her by her husband in repayment of a loan; and (3) that $5,000 of these Treasury bonds were given to her by her husband as a gift, $2,000 of which was to equalize gifts which her husband had made to his children.

On April 21, 1969, the executors brought this action in replevin against Hazel Whitenight, seeking possession of all the above-mentioned bonds. After Hazel filed an answer denying the executors' ownership (or right to possession), the case went to trial, on August 26, 1969, before the President Judge sitting without a jury.

The executors introduced into the record *admissions which were contained in a stipulation* by the parties that the testator had purchased the bonds with money from his individual bank account, and the dates of purchase and the amounts of the bonds purchased were set forth in detail. This was further corroborated by testimony and by the bank records. The executors thereby made out a prima facie case of ownership in the testator. See cases, infra. After the executors had

rested, Hazel Whitenight was called as a witness to support her claim. The executors objected to her testimony on the ground that her interest was adverse to the interest of the testator's estate and, therefore, she was incompetent to testify under the "Dead Man's Rule"* as to any matter that transpired between herself and the decedent during his lifetime. Their objection was overruled, and Hazel's testimony was admitted. Moreover, the Court believed Hazel's testimony. Following submission by both parties of requests for findings of fact and conclusions of law, the lower Court entered a verdict in favor of Hazel. Exceptions filed by the executors were dismissed by the lower Court, and from the judgment entered on the verdict, the executors took this appeal.

Cases such as the one before us have perplexed and vexed the Courts for many years. One of the two persons best able to resolve this issue is dead and the other, if her claim is adverse to the decedent's estate, is barred by law** from testifying. We are well aware of the fact that rules of evidence which have been adopted to thwart spurious claims sometimes result in precluding a living person from establishing a meritorious claim. In attempting to resolve this dilemma, this Court has adopted certain principles of law which we shall carefully consider.

First, we must determine the very important, sometimes difficult, and oftentimes decisive question of who has the burden of proof. In *Carr Estate*, 371 Pa. 520, 92 A. 2d 213, in a proceeding involving the ownership of securities between a claimant and a decedent's estate, the Court said (page 523) : "The burden of proof is on anyone who claims property in the possession of

---

* Act of May 23, 1887, P. L. 158, 28 P.S. §322.
** There are certain exceptions, which are irrelevant in this case.

another to establish facts essential to the validity of his claim of ownership: Henes v. McGovern, 317 Pa. 302, 176 A. 503; Weaver v. Welsh, 325 Pa. 571, 191 A. 3; Commonwealth Trust Company of Pittsburgh v. Hugo, 328 Pa. 116, 194 A. 904. . . . [I]n each of the above cited cases the property was in the hands of claimant and the claim was made by the estate."

The above-mentioned evidence which was presented by the executors undoubtedly satisfied their burden of proof and made out a prima facie case. *Pappas Estate,* 428 Pa. 540, 239 A. 2d 298; *Donsavage Estate,* 420 Pa. 587, 218 A. 2d 112; *Hendrickson Estate,* 388 Pa. 39, 130 A. 2d 143. The burden of proof then shifted to Hazel to prove, by evidence that was clear, precise and convincing, that her husband had sold or had given the bonds to her as gifts, or in payment for services, or for any reason whatsoever had unqualifiedly and unconditionally given or transferred them to her. *Carr Estate,* 371 Pa., supra; *Henes v. McGovern,* 317 Pa. supra.

In our opinion, Hazel's interest and claim were adverse to the interest of the decedent's estate and, therefore, both her testimony and her aforesaid self-serving letter (which was written after her husband's death) were inadmissible because of the "Dead Man's Rule." *Clay Estate,* 438 Pa. 183, 264 A. 2d 632; *Ford Estate,* 431 Pa. 185, 245 A. 2d 443; *Donsavage Estate,* 420 Pa. supra.

Hazel, the claimant, contends (1) that she was a competent witness and (2) that even without her testimony the record establishes a clear case of her ownership of the bonds. In support of her position, she asserts (1) her possession of the bonds in their jointly owned home (which she was unable to prove by legally competent evidence); and (2) her possession of these bonds *prior to and after* her husband's death, which she alleges was established by the introduction of her letter

of April 30, 1968 to the other beneficiaries which was written by her over three months after her husband's death; and (3) that the executors failed to include the bonds in the inventory and appraisement which they filed on April 24, 1969; and (4) that other negotiable U. S. Treasury bonds were found in a safe-deposit box held in the names of the decedent and Hazel; and (5) an admission on the part of the executors.

The widow's contentions relating to (a) the safe-deposit box and (b) the failure of the executors to include the aforesaid bonds in their inventory and appraisement are inadequate to prove her ownership, or even possession, of these bonds during decedent's life or at his death. Moreover, she contends that the executors' "admission" of her title to and possession of these bonds *before* or after his death *is based* upon the executors' statement that they *"learned"** that the bonds were in his widow's possession *"subsequent* to the death of Mathias P. Whitenight." This is far removed from an admission of title, and does not furnish the clear, precise and convincing evidence which is necessary to prove her claim.

Moreover, the fact that the bonds were kept at home where the decedent and Hazel lived does not, without more, legally establish either possession or title in Hazel prior to her husband's death or create a prima facie ownership in her. We have held that, as between husband and wife, or between people who live together, such occupancy or ownership of the place of residence raises no presumption that the personal property therein belongs to one rather than to the other. *Gongaware's Estate*, 265 Pa. 512, 109 Atl. 276.**

---

* Italics, ours.

** We are familiar with the principle that the quantum of proof necessary to establish a gift from a husband to his wife is much less than in the case of a gift to a stranger, but that principle does not aid Hazel in this case. *Gongaware's Estate*, 265 Pa. supra; *Henes v. McGovern*, 317 Pa., supra.

To summarize: we hold that the legally admissible evidence presented by Hazel was inadequate to overcome the prima facie case presented by the executors and that she was unable to prove her claim by evidence which was clear, precise and convincing.

Judgment reversed.

Mr. Justice COHEN took no part in the decision of this case.

