J-A23017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PETER R. SWISTOCK, JR., SUBSTITUTED FOR PETER R. SWISTOCK, SR., (DECEASED), | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHRISTINE SWISTOCK FLEGAL; AMY E. SWISTOCK A/K/A AMY SKOLOYZNSKI; PEGGY KEESHIN A/K/A MARGARET KEESHIN; AND NANCY L. SNYDER, | |
| Appellees | No. 1589 WDA 2013 |

Appeal from the Order entered September 6, 2013,
in the Court of Common Pleas of Blair County,
Civil Division, at No(s): GD 2010-GN-1907

| | |
|---|---|
| PETER R. SWISTOCK, JR., ANCILLARY ADMINISTRATOR OF THE ESTATE OF PETER R. SWISTOCK, SR., (DECEASED), | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHRISTINE SWISTOCK FLEGAL; AMY E. SWISTOCK A/K/A AMY SKOLOYZNSKI; PEGGY KEESHIN A/K/A MARGARET KEESHIN; AND NANCY L. SNYDER, | |
| Appeal of:  Peter R. Swistock, Jr. | No. 1808 WDA 2013 |

Appeal from the Order entered October 21, 2013,
in the Court of Common Pleas of Blair County,
Civil Division, at No(s): GD 2013-GN-1572

J-A23017-14

BEFORE: DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED SEPTEMBER 09, 2014**

At 1589 WDA 2013, Peter R. Swistock, Jr., ("Appellant"), as substituted plaintiff for his father Peter R. Swistock, Sr., deceased, ("Decedent"), appeals from the trial court's order denying Appellant's initial motion, amended motion, and supplemental motion for post-trial relief, and granting the motion to quash Appellant's untimely amended motion for post-trial relief filed by four of Appellant's siblings: Christine Swistock Flegal, Amy Swistock a/k/a Amy Skoloyznski, Peggy Keeshin a/k/a Margaret Keeshin, and Nancy L. Snyder, (collectively "Siblings"). At 1808 WDA 2013, Appellant appeals from the trial court's order sustaining Siblings' preliminary objections to Appellant's complaint and petition for writ of *coram nobis*. After careful consideration of these consolidated appeals, we affirm.

The trial court set forth the factual background as follows:

> At some point prior to this action, [Decedent] purchased a block of shares in Omega Bank, which he subsequently split into five separate share certificates, each titled in the name of himself and one of his five daughters as Joint tenants with rights of survivorship, ([Siblings'] Exhibit #2). In 2001, [Decedent] informed his daughters that he gave them each a block of Omega Bank stock; that they jointly owned the shares of Omega Bank stock with him; and that when he died, the entire amount of each block of stock would then be owned by each of the surviving daughters. (Trial Tr. 85-88).
>
> In 2008, Omega Bank merged with F.N.B. Corporation (hereinafter "F.N.B."). After the merger, F.N.B. issued five new share certificates, each in the amount of 9,917 shares, to [Decedent]. ([Siblings'] Exhibit #1). Each of these certificates was registered and titled jointly, listing [Decedent] and one of his five daughters as owners. ([Siblings'] Exhibit #1). The

- 2 -

letters "WROS" were printed next to each daughter's name, indicating rights of survivorship. ([Siblings'] Exhibit #1). The share certificates were in [Decedent's] personal, physical possession at all relevant times. [Decedent] retained the dividend payments from all the share certificates, which his daughters agreed to in order to provide their father with an additional source of income.

The parties agree that after [Decedent's] wife died in 2008, personal disputes arose between [Siblings] and [Decedent]. As a result of these disputes, by letter dated January 22, 2010, written by his attorney David Mason, [Decedent] notified his daughters that he wanted the shares of stock returned to him to be in his name alone. ([Siblings'] Exhibit #4).

For the F.N.B. stock to be transferred, a completed Request to Transfer Stock was required to be signed by all current registered owners of the F.N.B. stock, along with a Medallion Guarantee. ([Siblings'] Exhibit #4). [Siblings] did not comply with [Decedent's] request to transfer the stock. On May 21, 2010, [Decedent] filed this action, requesting an order of court declaring him the sole owner of the shares.

Trial Court Opinion and Order, 1/15/13, at 2-3.

Procedurally, the trial court explained:

[Decedent] initiated this action on May 21, 2010 by filing a Complaint against [Siblings] [at 2010-GN-1907]. [Siblings] filed a Counterclaim against their father accusing him of fraud, conversion, and mismanagement of two family limited partnerships. The Court held a Trial by Court on August 8, 2012 with an Opinion that followed. [Appellant] filed a timely Motion for Post-Trial Relief pursuant to Pa.R.C.P. 227.1.

After [Decedent's] death, [Appellant] filed a Substitution of Party as Successor in Interest and filed an Amended Motion for Post-Trial Relief pursuant to Pa.R.C.P. 227.1 on February 19, 2013. [Appellant's] [amended] motion incorporated [Decedent's] previous Post-Trial Motion for Relief and raised three new grounds for relief, [including the trial court's determination not to give full faith and credit to the Florida probate court's decision]. In response, [Siblings] filed a Motion to Quash [Appellant's] Untimely Amended Motion for Post-Trial

- 3 -

Relief on March 11, 2013. [Siblings] argued two points: first, [Appellant's] Amended Motion was untimely as it was filed after the ten day deadline set forth in Rule 227.1(c)(2); and second, any grounds not raised in the January 25, 2013 post-trial motion were waived. [Appellant] filed a Supplemental Motion for Post-Trial Relief on June 4, 2013 and argued that the issues raised in the Complaint and Petition for Writ of *Coram Nobis* in the separate action 2013-GN-1572 constituted additional grounds for granting post-trial relief in this case.

Trial Court Opinion and Order, 9/9/13, at 1-2 (unnumbered).

The trial court further explained:

While 2010-GN-1907 was pending, the Palm Beach County, Florida probate court issued an order on September 12, 2012, that certain shares of stock in F.N.B. Bank be transferred to [Decedent's] Guardian Pollard. After a Trial by Court on August 8, 2012, this Court rendered an Opinion and Order on January 15, 2013, which awarded [Siblings] certain shares of stock in F.N.B. Bank. []

[Appellant] filed the instant Complaint and Petition for Writ of *Coram Nobis* on May 30, 2013, [at 2013-GN-1572,] seeking to strike the January 15, 2013 Opinion and Order issued by this Court in 2010-GN-1907. []

This Court issued an Opinion and Order dated September 6, 2013[, and docketed on September 9, 2013,] that denied [Appellant's] Amended Motion for Post-Trial Relief and Supplemental Motion for Post-Trial Relief in 2010-GN-1907; [Appellant's] Amended Motion was deemed untimely and the three additional grounds were waived.

Trial Court Opinion and Order, 10/23/13, at 1-2 (unnumbered). On October 3, 2013, Appellant filed a timely notice of appeal to the trial court's September 9, 2013 Order. On October 11, 2013, judgment was entered in Siblings' favor.

- 4 -

At 2013-GN-1572, the trial court issued an order on October 21, 2013, which was docketed on October 23, 2013, sustaining Siblings' preliminary objections to Appellant's complaint and petition for writ of *coram nobis*. On November 15, 2013, Appellant filed a timely notice of appeal. The trial court did not order compliance with Pa.R.A.P. 1925 regarding either docket. On January 21, 2014, Appellant moved to consolidate the appeals. On February 11, 2014, we granted Appellant's motion to consolidate the appeals *per curiam*, and ordered that both appeals "shall be briefed and argued as if but a single appeal." Order, 2/11/14, at 1.

Appellant presents the following issues for our review:

1. Did the Court err in its refusal to grant Appellant's Request for a Trial Postponement?

2. Did the Court err in holding that the FNB stock shares constituted a valid *inter vivos* gift to [Siblings]?

3. Did the Court err in refusing to give full faith and credit to the decision of the Florida Probate Court, entered on September 12, 2013, holding that the FNB stocks were property of [Decedent's] estate?

Appellant's Brief at 7.

Appellant's first issue challenges the trial court's denial of Appellant's motions for continuance. Granting a motion for continuance is within the sound discretion of the trial court. *See Commonwealth v. Randolph*, 873 A.2d 1277, 1281 (Pa. 2005) (discretion is abused when the law is misapplied, or the trial court's judgment is manifestly unreasonable, partial,

prejudiced, biased, or arising from ill-will towards the defendant as reflected in the evidence or record).

In refusing to postpone the trial, the trial court explained:

[Appellant] argues that the Court erred and committed an abuse of discretion in failing to grant [Appellant's] Motions for Trial Postponement and Protective Order Regarding Notice to Attend. The Court understands that at the time of trial, [Decedent] was suffering from a pulmonary disorder; however, the Court made clear during status conferences that the trial would not be delayed and that [Decedent] must attend. [Decedent's] health was a concern to all parties throughout the proceedings. There were multiple delays and the Court provided all parties with clear directions that the trial would not be continued. Therefore, [Appellant's] request for a new trial is denied.

Trial Court Opinion and Order, 9/9/13, at 2 (unnumbered).

After carefully scrutinizing the record, we discern no abuse of discretion by the trial court. We further note that the record is devoid of any request by Appellant to produce Decedent telephonically, via video, or through any other alternative means for the August 8, 2012 trial. Moreover, given that Decedent suffered "a stroke on September 3, 2012 and became incapacitated" within weeks of the August 2012 trial, and ultimately died on September 13, 2012, a continuance, had it been granted, would not have changed the fact that the case proceeded without Decedent. *See* Appellant's Brief at 9. We are not persuaded that the trial court abused its discretion or committed an error of law in denying Appellant a continuance of the August 8, 2012 trial. ***See Randolph,*** 873 A.2d at 1281; ***see also Commonwealth v. Sandusky,*** 77 A.3d 663, 671-672 (Pa. Super. 2013) (affirming denial of

continuance where trial court expressed that "no date will necessarily present a better alternative").

Appellant's second issue challenges the trial court's determination that Decedent made a valid *inter vivos* gift to Siblings of the F.N.B. stock. In rebutting this challenge, the trial court explained:

> Generally, two elements are required to make a valid *inter vivos* gift of stock. First, at the time of the gift, the donor must intend to transfer an interest in the stock to the donee. Second, when a joint tenancy is intended, the donor must make a delivery of the stock to the donee in such a manner "as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." *In re Martella's Estate*, 135 A.2d 372, 373 (Pa. 1957).
>
> A series of Pennsylvania Supreme Court cases consider the narrow issue of whether there has been proper delivery of a joint tenancy interest in stock. In *In re Holmes Estate,* the Court stated, in dicta, that registration of stock in the name of a son or daughter as joint tenants is not enough, by itself, to constitute valid delivery. 200 A.2d 745, 747 (Pa. 1964); *see also In re Martella's Estate*, 135 A.2d 372, 373 (Pa. 1957) (finding no delivery when the donor placed stock in a safe deposit box to which the donee had no access). Placing joint stock in a jointly held safe deposit box, however, will satisfy the delivery requirement. *In re Parkhurst's Estate,* 167 A.2d 476, 479 (Pa. 1961).
>
> Notwithstanding this precedent, Pennsylvania courts have found that in certain circumstances the "mere change in registered ownership is effective delivery, of a gift of corporate stock." *See Wagner v. Wagner*, 353 A.2d 819, 823 n.9 (Pa, 1976); *McClements v. McClements,* 191 A.2d 814, 815-16 (Pa. 1963). In *McClements*, for example, the Court found constructive delivery where a son testified that his decedent-father transferred shares to his sons in order to avoid the reach of creditors. 191 A.2d at 816. In *Wagner*, the Court held that delivery occurred when the donor gave share certificates to his children for their signatures, even though the donor subsequently kept the shares in his exclusive possession. When

- 7 -

the transfer is from parent to child, less evidence is required to establish the donee's intent to transfer a present interest. *McClements*, 191 A.2d at 816. There will also be valid delivery of stock when the donor transfers the stock to a third party, with instructions to distribute the stock to the donees. *In re Wilson's Estate,* 301 A.2d 384, 386 (Pa. 1973).

The Court finds that [Decedent] made a valid *inter vivos* gift of the stock certificates; therefore, the F.N.B. stock certificates are jointly held with rights of survivorship. [Decedent's] failure to be present during the trial by court makes his intent difficult to determine. Relying on the trial testimony of Christine Swistock, [Decedent] indeed intended to transfer an interest in the F.N.B. stock certificates to his daughters and made sufficient delivery of the stock certificates in order to complete the gift. Moreover, by registering the Omega Bank stock certificates in his name and his daughters' names with rights of survivorship, [Decedent] relinquished sole dominion and control over said stock certificates.

Defendant Christine Swistock testified that she became aware that there was stock put in her and [Decedent's] name when [Decedent] told her so in 2001. (Trial Tr. 85-88). [Decedent] told her that he had divided the bulk of stock, putting half into the partnership and half in the names of each of the five daughters equally. (Trial Tr. 85-88). Christine Swistock testified that her understanding was that she was a joint owner of the stock, which her father gave as a gift. (Trial Tr. 85-88). These statements to his daughter demonstrate that the intent of [Decedent] was to give his daughters a gift. The Court concludes that [Decedent] intended to give his daughters an immediate interest when he re-titled the stock.

Relative to the delivery element, [Decedent] never physically delivered the F.N.B. share certificates to any of the Defendants. Although the daughters never had possession of the certificates, physical custody is irrelevant. Constructive delivery, as occurred in *Wagner* and *McClements*, was complete. F.N.B. corporate records reflected the joint tenancy, as demonstrated by the F.N.B. share certificates themselves. The transfer of the stock was a complete and natural gift from a parent to his children.

Trial Court Opinion and Order, 1/15/13, at 5-8.

We agree with the trial court. We find noteworthy that Decedent sought an attorney's intervention in securing the return of the stock from Siblings, and that to complete such a return a Request to *Transfer* Stock would have been required to effectuate the change in ownership. *See* Trial Court Opinion, 1/15/13, at 2-3 (emphasis supplied). Such efforts coupled with Christine Swistock's testimony provide record evidence supporting the trial court's determination regarding Decedent's intent, and we discern no basis to disturb the trial court's findings. ***See Ashley v. Ashley,*** 393 A.2d 637, 639 (Pa. 1978) (donor's intent shown where present intent to transfer ownership can be derived from circumstances); ***In re Novosielski,*** 992 A.2d 89, 104 (Pa. 2010) ("[a]bsent extraordinary circumstances, an appellate court will not substitute its judgment for that of the fact finder"); ***Owens v. Mazzei,*** 847 A.2d 700, 706 (Pa. Super. 2004) ("If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable.").

Appellant's third issue contends that the trial court erred in sustaining Siblings' preliminary objections in the nature of a demurrer to Appellant's complaint and petition for *coram nobis*. In seeking a writ of *coram nobis*, Appellant posits that according full faith and credit to the Florida probate court's September 12, 2012 order transferring the F.N.B. stock to Decedent's guardian precludes a judgment in favor of Siblings. We cannot agree.

We are mindful:

As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) (citations and internal quotation marks omitted). *Accord, Friedman v. Corbett,* ––– Pa. ––––, 72 A.3d 255, 257 n. 2 (2013). Furthermore,

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint ... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.,* 74 A.3d 157, 162 (Pa. Super. 2013) (citation omitted).

***Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.,*** —

A.3d — at 3 (Pa. Super. 2014), 2014 WL 1717029 at 3 (May 1, 2014).

Our Supreme Court has explained:

The United States Constitution requires that full faith and credit "shall be given in each State ... to the judicial [p]roceedings of every other State." U.S. Const. Art. IV, § 1. The Full Faith and Credit Clause **thus precludes a party from**

- 10 -

> **attacking collaterally a judgment of one state by attempting to re-litigate the underlying dispute resolved by that judgment in another state.** Thus, full faith and credit typically requires that a state give a judgment the same *res judicata* effect the judgment would have been afforded in the state in which it was rendered. *Thompson v. Thompson,* 484 U.S. 174, 180, 108 S.Ct. 513, 517, 98 L.Ed.2d 512 (1988); *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963).
>
> *Res judicata,* or claim preclusion, **prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication**. *R/S Financial Corporation v. Kovalchick,* 552 Pa. 584, 716 A.2d 1228, 1230 (1998). The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed. *Id.*

*Wilkes ex. rel. Mason v. Phoenix Home Life Mut. Ins. Co.,* 902 A.2d 366, 375-376 (Pa. 2006) (emphasis supplied).

Here, the Blair County action preceded the Florida probate matter, therefore it cannot be asserted that the Blair County action was sought to "collaterally attack" a litigated issue, or to "re-litigate" a resolved underlying dispute. Moreover, the record does not reflect that the issue of whether there was an *inter vivos* transfer between Decedent and Siblings was specifically heard or determined by the Florida probate court. Significantly, the Florida probate action was for the creation of a guardianship over Decedent. *See* Appellant's Complaint and Petition for Writ of *Coram Nobis*, 5/30/14, at 3 (unnumbered) ("While the aforementioned Blair County civil action was pending, a *Guardianship* proceeding in Palm Beach County,

- 11 -

Florida was undertaken and [Decedent's daughter Marcia] Pollard was appointed Guardian for [Decedent], via Order of Court entered on September 11, 2012[.]").  The September 11, 2012 Order only appointed Pollard as an "emergency temporary guardian," whose authority expressly expired "ninety (90) days after the date hereof, unless earlier terminated by the appointment of a guardian or extended by order of this court."  *See* Appellant's Complaint and Petition for Writ of *Coram Nobis*, 5/30/14, Exhibit A, Order, 9/11/12, at 1.  The Florida probate court's September 12, 2012 order transferring the jointly owned F.N.B. stock to Decedent's guardian did not in any way reference, discuss, or address whether such a transfer considered the *inter vivos* argument, which is central to the ongoing Blair County action.  *See* Appellant's Complaint and Petition for Writ of *Coram Nobis*, 5/30/14, Exhibit B, Order, 9/12/12, at 1-2.  Moreover, since the stock was owned as joint tenants with right of survivorship, the Florida probate court's September 12, 2012 order, which preceded Decedent's death, could only convey to Decedent's guardian the shared property interest Decedent had with Siblings.  ***See In re Parkhurst's Estate,*** 167 A.2d 476, 478 (Pa. 1961) ("The essence of title as joint tenants with the right of survivorship[,] and not as tenants in common[,] is to vest in two or more persons joint ownerships during lifetime, **with sole ownership and control passing to the survivor at the death of the other joint tenant."**) (emphasis supplied).  Accordingly, we are not persuaded that the Florida probate

court's September 12, 2012 order precludes the trial court's judgment in favor of Siblings.

We further acknowledge:

> The writ of error *coram nobis* to nullify or reform a judgment lies only where facts exist extrinsic of the record, unknown and unknowable by the exercise of diligence at the time of its rendition, and which would, if known, have prevented the judgment either in its entirety or in the form in which it was rendered.

> ***

> The purpose of the writ of *coram nobis* is to bring before the court rendering the judgment matters of fact which if known at the time the judgment was rendered would have prevented its rendition. It lies to correct errors in fact only, and will not lie to correct errors in law, nor will it lie to permit the review of a judgment for after-discovered evidence.

> ***

> The writ will not reach facts actually determined in the original proceedings. Where a party seeks to avail himself of the remedy of a writ of error *coram nobis* he must show that it was by no fault or negligence of his that the error in fact assigned was not made to appear at the former trial.

**Commonwealth v. Harris,** 41 A.2d 688, 690-691 (Pa. 1945) (internal citations omitted). Moreover, "[b]efore a court will issue the writ, the petitioner must show … the absence of a remedy at law." **Commonwealth v. Thomas,** 513 A.2d 473, 474 (Pa. Super. 1986) (internal citation omitted).

Appellant was aware of the Florida probate court's September 12, 2012 order when the trial court entered its January 15, 2013 order determining that the stocks were a valid *inter vivos* gift to Siblings. Also, it

is undisputed that Appellant was aware of the order by the time that the initial post-trial motions were timely filed in this action on January 25, 2013. The initial post-trial motions did not mention the September 12, 2012 Florida probate court's order transferring the F.N.B. stock to Decedent's guardian, nor did they raise the full faith and credit argument Appellant presents in this appeal. *See generally* Appellant's Motion for Post-Trial Relief Pursuant to Pa.R.C.P. No. 227.1, 1/28/13. Accordingly, this ground is waived. *See* Pa.R.C.P. 227. 1(b)(2) ("[P]ost-trial relief may not be granted unless the grounds therefor … are specified in the motion … Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."). Moreover, Appellant cannot show that the trial court was unaware of the Florida probate court's September 12, 2012 order "through no fault or negligence of [appellant][.]" ***Harris, supra,*** at 691. We therefore conclude that Appellant, by not raising the full faith and credit argument in a timely fashion, has waived this issue and we decline to reach it. ***See Commonwealth v. Mitchell,*** 346 A.2d 48, 52 (Pa. 1975) ("Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration."); ***see also Belote v. State Harness Racing,*** 688 A.2d 264, 266-267 (Pa. Cmwlth. 1997) (full faith and credit argument deemed waived for failure to raise before the administrative agency).

We further agree with the trial court's determination that Appellant is not entitled to a writ of *coram nobis* because Appellant has other remedies at law. **Mitchell,** 346 A.2d at 52. Specifically, the trial court explained:

[Appellant] challenges the January 15, 2013 Order on the same grounds contained in both the untimely Amended Motion and Supplemental Motion for Post-Trial Relief in action 2010-GN-1907. The Court recognizes that *coram nobis* is "broader than its comnon-law predecessor"; however, [Appellant] ignores the limitations on *coram nobis* to "extraordinary cases presenting circumstances compelling its use to achieve justice" and where alternative remedies are not available. *U.S. v. Denedo*, 556 U.S. 904, 911, 921 (2009). [Appellant] utilized one of the available remedies through several post-trial motions pursuant to Pa.R.C.P. 227.1 in action 2010-GN-1907. Although [Appellant] may have "felt it had no other option but to file this action", the Court notes that [Appellant] declined to file a praecipe for entry of judgment after [Appellant's] post-trial motions remained undecided after one hundred twenty days as warranted in Pa.R.C.P. 227.4. [Appellant's] Br. in Opp. to [Siblings'] Prelim. Objection 3. Accordingly, [Appellant] has another option available as he may file an appeal in 2010-GN-1907 now that the Court has decided those post-trial motions. As such, a writ for *coram nobis* is inappropriate as an alternative remedy remains available to [Appellant].

Trial Court Opinion and Oder, 10/23/13, at 4 (unnumbered). Given the foregoing, we find no error by the trial court in sustaining Siblings' demurrer to Appellant's complaint and petition for a writ of *coram nobis*.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2014